## WILLIAM LANSING vs. JOHN CLAPP and others.

A judgment which is the oldest lien on the equity of redemption of mortgaged premises of the Defendant, must first be paid out of the surplus moneys arising on the sale under the mortgage—notwithstanding the Plaintiff may have obtained a judgment against the sheriff for not returning an execution issued on the first judgment, and has assigned it to a person other than the sheriff, and the assignee applies for such surplus.

The assignee, in such a case, must show that he is the absolute owner of the judgment, that it was not assigned to him nominally merely, and held in trust for the sheriff.

Although the sheriff may derive a benefit from the payment of such judgment out of the surplus moneys, in reducing the amount of the judgment against him for neglect of duty, yet, if he purchased the first judgment, or was the absolute owner without the consent of the Defendant, it would operate as a satisfaction of it.

A judgment by confession, given to the Plaintiffs to secure and indemnify them as sureties on a guardian's bond, executed by Defendant, and being a lien upon the equity of redemption of the Defendants' mortgaged premises, will be entitled to surplus moneys, in order of their lien, although the Plaintiffs have not been damnified. Their lien is transferred from the equity of redemption to the surplus moneys arising on the sale, and can only be divested by their being discharged from their liability.

*Rensselaer Special Term, Nov.*, 1847.—Upon the sale of the mortgaged premises under a decree in this cause there was a surplus of $1074.35, which is the subject of the present application. On the 13th day of November, 1845, Cornelius L. Tracy recovered against John Clapp, the owner of the equity of redemption in the mortgaged premises, a judgment for $168.52. This judgment, on the 17th of September, 1847, was assigned by Tracy to Richard Rose, who claims that it should be paid out of the surplus. On the 26th of February, 1846, Clapp confessed a judgment for $22,000 of debt and $29.46 of costs, in favor of Thomas C. Brinsmade, George V. Huddleston and Abraham D. Spoor. A stipulation was signed by the Plaintiffs in this judgment at the time it was confessed, stating that it was *" to secure and indemnify them against any and all loss or damage for or by reason of their having become the sureties of the said John Clapp, in the bond executed by him, upon being appointed by the Surrogate of Rensselaer county, guardian of Harriet N. Rankin, a minor, and to secure the faithful performance of his trust as such guardian."* Clapp having resigned his guardianship, Robert D. Silliman was appointed guardian in his place, and on the 8th day of June, 1846, Clapp having rendered his account before the surrogate, a decree was made, directing him to pay, on demand, to the new guardian, $3587.76, the balance found due from him. On the 25th of April, 1846, Clapp executed to his ward a bond and mortgage upon the premises subsequently

sold under the decree in this cause to secure the payment of $4000 in four years from November 22, 1845, with interest, which bond and mortgage were stated in the condition thereof to have been executed " to secure the said Harriet, who is the ward of the party of the first part, for moneys received by him as her guardian, and thus to relieve the sureties of the said guardian from any loss or damage. Upon the appointment of the new guardian, this bond and mortgage were delivered over to him with the assets of his ward.

On the 10th day of April, 1846, the Merchants' and Mechanics' Bank of Troy, recovered a judgment against Clapp for $373.96, which was subsequently assigned to Abraham D. Spoor.

The usual order of reference to report upon the claims to the surplus moneys was made. The referee reported that the whole surplus is applicable to the judgment in favor of the sureties of Clapp upon his bond as guardian. To this report exceptions were taken by Rose, the assignee of the Tracy judgment, insisting that his judgment was entitled to be first paid. Exceptions were also taken by Spoor, as assignee of the Bank judgment, insisting that his judgment was entitled to be paid in preference to that in favor of the sureties. The facts that appeared upon the hearing before the referee, so far as they are material to the decision of the questions arising upon the exceptions, are stated in the opinion of the court.

R. Christie, Jr., for Rose.

D. Gardner, for Spoor.

H. P. Hunt, for Brinsmade.

Harris, Justice.—Although it appeared before the referee that an execution had been issued upon the judgment in favor of Tracy to Gideon Reynolds, late sheriff of Rensselaer, and that a judgment had been recovered by Tracy against Reynolds for not returning that execution, and also that Tracy had issued an execution upon the judgment against Reynolds to the coroner, which was still in his hands, yet it is not pretended that, if Tracy had presented a claim to have his judgment against Clapp paid out of the surplus moneys, such claim could have been successfully resisted. The fact that he had recovered a judgment against the sheriff for neglect of duty in respect to the execution upon his judgment against Clapp, and that he had issued an execution upon such judgment against the sheriff, which remained uncollected, could not operate to deprive him of any of his legal remedies against Clapp. But it is insisted by the Plaintiffs in the second judgment that, although the

judgment is in form assigned to Rose, in fact it belongs to Reynolds, the sheriff: and the referee has reported that it was assigned to Rose "*for the benefit of Reynolds.*" If Reynolds were, indeed, the owner of this judgment, having taken the assignment without the request of Clapp, I think it should be held to be a satisfaction. It is against sound policy to allow a sheriff to satisfy a debt with his own money, and then, by taking an assignment of the judgment, to keep it still alive. I am not aware, however, that any court has ever gone so far as to hold that, even this might not be done, at the request of the Defendant in the judgment. But in this case, if by reporting that the judgment was assigned to Rose for the benefit of Reynolds, the referee intended that Rose was but a nominal assignee, holding the assignment in trust for Reynolds, I think the proof in the case fails in that respect to sustain the report. It is true, that if Rose succeeds in establishing a prior lien upon the surplus moneys in question, it will enure to the benefit of Reynolds, by reducing the amount he is liable to pay upon the judgment recovered against him for neglect of duty. The same effect would have been produced if Tracy had presented the claim instead of Rose, and to that extent the claim might properly have been said to have been made for the benefit of Reynolds. And yet, in that case, such an objection would hardly have been raised. It may well be, that the motive which induced Rose to purchase the judgment was to benefit Reynolds. This he had a right to do, and the question to be determined is whether Rose or Reynolds is the real owner of the judgment. The assignment itself is *prima facie* evidence that Rose is such owner. The only proof to rebut this evidence of ownership, is in the testimony of Rose himself, who was examined before the referee. He testified that Reynolds requested him to purchase the judgment, and told him that if he did, he could probably save something; but he states that he paid the whole amount of the judgment himself, and that there is no understanding that he shall be saved harmless if his claim is not allowed. This evidence is so far from rebutting the presumption arising from the assignment itself, that, in my judgment, it sustains that presumption and shows affirmatively that Rose is the real and *bona fide* assignee of the judgment. The exceptions taken by Rose to the report of the referee, so far as they relate to the claim of Rose to have his judgment paid out of the surplus moneys must therefore be allowed, and the order must direct that the amount of the judgment assigned by Tracy to Rose, principal and interest, be paid out of the surplus moneys in question. He must also be allowed his costs upon the reference and the costs of the exceptions upon which he has succeeded, to be taxed.

In regard to the judgment in favor of the sureties upon the guardian's bond, I can see no reason why the residue of the surplus moneys should not be applied upon it, even though it should be regarded as a mere indemnity against the liability of the Plaintiff. It may well be, that in an action at law upon the bond upon which this judgment was entered, a recovery could not be had without showing that the Plaintiff had been damnified. I am inclined to think, too, that the counsel for Spoor was right in assuming upon the argument that the Plaintiffs would not have been entitled to issue execution upon this judgment until they had sustained some loss or damage as sureties. But, conceding this to be so, upon what principle are the Plaintiffs to be deprived of the security with which it was intended they should be provided by means of this judgment? The lien of a judgment may certainly be valid, although it is entered upon a bond of indemnity upon which no judgment could be recovered, because no breach of the condition could be shown. So, too, the fact that the Plaintiffs had no right to issue execution before they had been damnified, could not operate to divest the lien of the judgment upon real estate. The Plaintiffs, by virtue of their judgment, held a lien upon the Defendants' equity of redemption in the premises sold for their indemnity. The premises having been sold, the lien was transferred, from the equity of redemption to the surplus moneys arising from the sale. This lien can only be divested by showing that the Plaintiffs are discharged from their liability.

It appeared affirmatively before the referee that more than $1100 still remains due from Clapp, as guardian, but it is insisted that by the execution and delivery of the bond and mortgage, payable at a future day, the right to collect the balance due from the guardian is suspended, and thereby the sureties are discharged. What would be the effect of an agreement made by the present guardian, thus to suspend the collection of the amount due, it is not necessary now to decide. It is enough to say that there is no evidence of any such agreement. There is no evidence in the case from which it can be inferred that the right to enforce the surrogate's decree against Clapp has ever been suspended for a single moment. The bond and mortgage were executed by Clapp before he resigned as guardian, and upon the appointment of the new guardian, these papers, with others, were delivered over to him—but nothing is shown to justify the conclusion that he ever intended to suspend his right to enforce the collection of the surrogate's decree. It was urged, upon the argument, that these moneys ought not to go into the hands of Brinsmade, for the reason that he might never be made

31

liable for the payments of the amount due from the guardian, and for the further reason that he might not be able to pay, if made liable. Neither of these reasons would be sufficient to deprive him of his lien upon the surplus moneys, if the judgment under which he claims was, as has already been shown, a valid lien upon the Defendants' equity of redemption in the premises sold. If he receives any part of the moneys in question by virtue of his judgment, he becomes a principal debtor to the new guardian to the extent of the amount so received, and if there is any doubt about his ability to pay, either Clapp or any other person interested in having the money applied to the payment of the amount due from Clapp, to the present guardian, has the power to compel such application.

The exceptions of Spoor to the referee's report, must be disallowed with costs—and the order must provide that the balance of the surplus moneys, after paying the amount of the Tracy judgment and the costs already directed to be paid to the claimant Rose, be paid to the claimant Brinsmade, to be applied, after deducting the costs of the reference, towards the satisfaction of the surrogate's decree against Clapp.